All right, our second case is Maryland Shill v. Attorney General Hogan, or Governor Hogan, v. Mr. Panik. Did I pronounce that right? Panik, thank you, Your Honor. Thank you. We have peace of court, Mark Panik, for the counsel for the appellant's plaintiffs in this matter. There are two issues before the court. One is whether or not the Maryland ban on so-called rapid-fire trigger activators is a taking because it takes the possession and denies the possession of previously existing property rights. And the second issue is whether a discrete part of the Maryland statute that purports to ban the possession on a strict liability ban any device when attached to a firearm, any firearm, increases the rate of fire by any amount. So I'd like to address both. I'd like to focus first on the takings issue. So there are two prongs to the takings analysis. There is the police power, or the public use prong, and then there is the just compensation prong. No one disputes here that Maryland may ban all these devices. Wait, don't you have to deal with standing first? No, we don't on standing, Your Honor, because standing was addressed only as to the vagueness question. The court never dismissed on the takings question. But standing rulings, even the standing ruling for vagueness, are inherently without prejudice. So how do we have jurisdiction? Your Honor, the court below dismissed the takings claims on a 12B6 ground on grounds that there was a failure to state a claim upon which relief can be granted. You have in this record the affidavits of the individual plaintiffs that expressly state that they possess the items that have been banned and that object to the ban on that ground. So there is clear standing in the sense that all these individuals have been individually affected. So you don't need to get into MSI's standing because the standing of any one plaintiff is sufficient to allow the court to proceed to the merits. So that's also true on the vagueness point, too. But I would like to stress that standing is not an issue, and the state hasn't raised an issue, and neither does the district court, with respect to the takings claim. I take her point to be, I think, slightly different than the point you're responding to. If the claim was dismissed without prejudice, barring some exceptions, a claim would not be appealable. Because it would not be a final order. The question I think that Judge Thacker was getting at is why should we believe that this dismissal by the district court was with prejudice? And I think there are a couple of possible answers, but I'm curious what you think, why do you believe it was done with prejudice and not without prejudice? Well, in the 45 years that I've been a lawyer, I'm a trial lawyer and an appellate lawyer, I've never seen a district court dismiss a case on a 12B6 motion, and if he meant without prejudice, without him saying it was without prejudice and giving the parties leave to amend. But the district court had no occasion to do here because it ruled on the merits that there was a failure to state a claim upon which relief could be granted. And there's really, this is a facial challenge to the statute itself. So it's not a fact we can amend to say that the facial challenge is anything other than it is. Well, what about our Fourth Circuit case, homeowners association versus open band, that says a dismissal for lack of standing or any other defect in subject matter jurisdiction must be one without prejudice because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits. So if the court doesn't have standing, the court can't then get to the merits. So we have to either, there either has to be a clear showing that no amendment could cure the defect or we don't have jurisdiction. The passage Your Honor just read was addressing to standing or other jurisdictional issues, but the district court here reached the merits on the taking claim. Right, but that passage says the district court cannot reach the merits if there's no standing. Well, I understand that, Your Honor, but there is no way we can possibly amend this complaint to say anything different than we have because the challenge is to the facial validity of the statute itself. Did you seek to amend the complaint? No, Your Honor, we did not. Nor did the district court give us leave to amend. But that may be arguably applicable to the vagueness issue, and we'd be happy to go back and amend on the vagueness issue if you'd like, but it has nothing to do with the takings claim at all. Is your claim today that you could not amend on the vagueness claim in order to solve, as a factual matter, you lack the facts to amend to solve the district court's vagueness standing ruling? Well, Your Honor, our claim on the vagueness issue is that the district court used the wrong standards. I understand that, but what I'm saying is accepting the district court's ruling for what it is, are you claiming now on appeal that you are unable to amend to satisfy the district court's standard? So in other words, if the district court applied the correct standard, I take it you're saying we can't amend. There are not sufficient facts. We could not allege other facts. We could amend additional facts on MSI standing. We certainly could do that. I don't think we could amend additional facts to state the individual standings under the standard that the district court imposed because there's no way we can meet that standard. All right, so tell me, but then that seems to suggest to me that maybe we don't have jurisdiction because if you're claiming, is your claim that you could assert facts based on the district court's standard that would satisfy standing for MSI on the vagueness challenge? Your Honor, I don't even want to get into MSI standing because MSI standing. No, no, well, I'm asking you, so I think you ought to get into it. Okay, so we could probably amend facts to better establish MSI standing, but we can't amend facts to establish the standing of these individual claims under the district court's standard. Let me be very, very, I just want you to be precise because it probably is important to you. In what way could you amend MSIs? Understanding you could not amend for the individuals, but in what way could you amend your factual allegations with respect to MSI such that it would give MSI standing under the district court's analysis? So the district court said we had an alleged MSI as a body, and there's two aspects to MSI standing. Representational standing, to represent the members, and there's standing as an organization. We can allege additional facts to MSI's organizational standing issue because the injury itself, we can elaborate how MSIs has had to divert resources, for example. Okay, so then do you understand that if you can do that, then it's not a final appealable order. If there's something you can do to amend the complaint to cure the defect the district court found, then it's not a final order. Your Honor, the point on this, we can't amend the complaint to meet the legal standard that the district court set because that's physically impossible for us, for MSI and any other individual. That's what I'm asking you. So it just seems like now you're taking the different position. I want to be very clear because this is really important for you, I think, I think really important for us, even more so than the merits of your claims, this matters. You agree that there are, you lack the facts to assert standing under the district court's test for the individual plaintiffs, correct? That's correct. Under the district court's test, same question that I've gotten a little bit of a different answer, but with respect to MSI, using the district court's test, could you, do you have the facts, do they exist that would permit you to amend to give MSI standing under the district court's analysis? Under the district court's test, no, we do not. And that is why we didn't seek to amend because we can't possibly meet the district court's test. The district court's test is wrong. So that's as to 12B-6, then your argument is this is presumptively the final order and we have jurisdiction to hear your appeal on 12B-6. 12B-6 are the takings claims, 12B-1 was the vagueness claims. And we can't amend either one of those claims to say more clearly the theory of this case. We don't have the facts that we can amend. We didn't seek to amend for that reason. We appealed because the district court's test is something we can't meet, ever. And can I also add, I just want to make sure I'm right about this, but my recollection is that the state moved to dismiss with prejudice. Yes. Nobody argued that it should be without prejudice. Maybe they should have. And the district court, in dismissing, granted the motion without modifying the with or without prejudice. And then after doing so, entered an order to close the case. That is completely correct. And so those facts also suggest to us that the district court and the parties believed it to be a dismissal with prejudice. Absolutely correct. And there's nothing you could do under the court's standard to cure the defect that the court found. That's correct. Now, under the proper test that we've argued, we could certainly add additional facts, but that goes to the district court's standard. So I see that my time is almost over, but I want to mention one clear statement here. The takings claim, it's the, our state argues that the takings claim is gone because the police, the state has exercised police powers. Well, that is, would basically abrogate the takings clause, because every time the state issues the police orders, and there's nothing to that, by the way, after Kellogg versus the City of New London, that it's then gone because you could always exercise police powers and then abrogate the takings clause. I take it your argument there is the police power limitation, if you will, to a takings claim applies only to regulatory takings and not to per se takings. I took it that your argument is, yes, maybe we can talk about police power in the regulatory context, that that's at least a possible argument that's there. But in the per se context, posthorn, the police power exception, like a nuisance exception, simply does not apply to the per se context. The police, it's presumed in the per se context that if they exercise the police power, it simply is irrelevant to the per se context, because there's no police power that would ever excuse a per se taking. But you do agree in the regulatory context, in a regulatory taking, that the police power may be pertinent under Penn Central and may be under a version of Lucas to the extent the police power is determinist with like a nuisance exception. Certainly under the separate Penn Central analysis, yes, of course, because then you get into a whole panoply of ad hoc considerations that are considered, but not in the per se taking context. Would this statement be true that you will never be able to meet the district court's test for standing unless and until Maryland enforces SB 707 in a problematic way? Is that, then at that point in time, you could amend your complaint and make it part of the 1286 argument? Well, yes. When it does that, then we'll have additional facts when they actually threaten enforcement, and we'll have additional facts on an as-applied basis. But this is a facial challenge, not an applied challenge. And I wanted to call on that very vagueness point. Of course, the decision in the Manning v. Codwell decision, the in-bank decision, but not 12, says very clearly that you don't reach standing issues without looking at the merits, because by its very nature, the standing on a vagueness challenge involves looking at how this statute, as interpreted, applies to these plaintiffs. But in Manning, there was pretty good evidence that the Commonwealth was enforcing it in the manner that was being alleged by the plaintiffs. In contrast, you have not alleged facts, at least that I can tell, that suggest there's a reasonable likelihood that the Commonwealth is going to prosecute either your members or the individuals for the non-enumerated items that you've suggested might fall within these sets of devices. Your Honor, with this new statute, we haven't had the chance to wait until the Sword of Democles falls. And the value of the sword is not that it falls, it's that it hangs. We are intimidated and inhibited in the exercise of our rights by virtue of the fact that the prosecution possibility even exists. And this Court has recognized that over and over again, that you don't have to wait until there's a threat of prosecution. The Supreme Court in Babbitt says the same thing. So you would have to hold that our fear is completely imaginary. That's the test. And it's not imaginary. And with respect to the non—I mean, I guess you've got a legitimate fear to the enumerated items, right? I mean, the claim on the vagueness, though, is not on the enumerated items. It has to be on the non-enumerated items, the items that you claim fall within the sort of residual clause if we would. That is so vague that even the ATF in its rule—may I complete the sentence? Yes, sure. ATF in its rule said that on the vagueness challenge to the rate of fire, that rate of fire cannot be used to distinguish a semi-automatic weapon from an automatic weapon, that the regulation that the ATF itself adopted makes no reference to rate of fire. It's an unintelligible standard and is the very standard, the linchpin of this provision that we are subjected to. So rate of fire is simply the heart of the state's regulation. It's exactly the same regulation that the ATF disavowed. And you see this in 66-533-34 of the Federal Register 83. So I see my time has expired. You have some time in the room. Thank you. Let me ask you before you get started. Since he has said he can't amend his complaint to satisfy the test of the district court, don't we now have a final order where we can deal with this case? I think the court does have effectively a final order in which it can deal with this case. The state moved to dismiss with prejudice. There's no indication in the judge's order that he intended to dismiss without prejudice. It's been the understanding of both parties that it was a dismissal without prejudice. And I would agree with counsel. You mean with prejudice? With prejudice, sorry. We don't need any more confusion. Yes, gotcha, gotcha. And I also agree with counsel that I don't think there's a way that they can amend their complaint to establish standing on the vagueness claim because it all is based on this hypothetical speculative possibility that a rogue prosecutor someplace, somewhere, might interpret this rate of fire provision in the very broad way that they believe that it can be interpreted, which, by the way, is an interpretation that later in the brief they characterize as nonsensical. So this is a concocted theory of vagueness that they really can't allege any facts that would give them standing to raise it. Well, they set it up that way, didn't they? Beg your pardon? They set it up that way. Yeah, they're the master of their complaint. They chose to allege it that way. They are trying to strike down the whole statute. Their gripe isn't with specific applications of it. They want the whole statute invalidated. And a lot of their arguments— Do you agree that just in this sort of hypothetical world that they were correct, that this rate of fire principle is void for vagueness, that the most the court could do in that scenario is limit the statute, sever it only to the enumerated items and leave off the sort of residual piece that exists? Would that be the—if, and accept the hypothetical, if they were right on the void for vagueness, it would not affect the enumerated items, the ban on the enumerated items? I think that's right. It wouldn't affect that. I don't understand plaintiffs to be arguing that it would affect the enumerated items. I think by any outcome of this case, those stand. But I want to take a step back from the jurisdictional questions to get into some of the merits here, because I know my colleague didn't really have a lot of opportunity to do that, and maybe you can hit me with some questions and elaborate on these issues. But it's important to understand the— Well, let me start with the question that I was talking with him about. If, again, if, if something is a per se taking, do you agree after Horn and a number of other cases that the police powers is not an exception to the per se taking context? It only applies in the regulatory context? No, I don't agree with that. Okay, and what is the case that you would have me read to sort of support that idea? Because, you know, when I read Horn and Lucas, and Lucas really relying on Loretto, those three cases seem to say pretty clearly to me that the police power is only an exception to regulatory takings. And that might be important here, but that if it's a per se taking, that it doesn't apply. I think an answer has to start with the notion of police power. Police power is a term that attorneys in my position representing the state are forever coming before courts and saying that this is justified by the police power. And so the court has to scrutinize that and see, well, what is this, what powers is the state exercising here? Environmental regulations are always justified on the basis of police power. But here we have an exercise of core police powers to protect public safety. And that type of police power has never been subject to takings limitations. When you start from Mugler versus Kansas to Miller v. Schoen. But, I mean, Mugler is just a limitation on use, right? So everybody agrees, I mean, those are all regulatory takings cases, right? And that's the problem with Mugler and those lines of cases, right? We can talk about whatever it is, the brewery company. Those were regulatory takings. What I can't find are cases that, particularly after Horn and Lucas, but even before them, that say a per se taking is subject to that same type of a limitation. Well, after Lucas but before Horn, I think you would just start with your, this court's decision in Holiday Amusement, where Judge Wilkinson is very clear that he is only addressing a regulatory takings claim. I mean, he could not be any clearer that he is not addressing a per se claim. This is only a regulatory takings claim. And I respect that, right? I mean, that is only a regulatory. I don't think this resolves your case, by the way, by any stretch. I'm just trying to understand the framework. And Holiday Amusement is plainly a regulatory taking. I mean, he says it repeatedly. But Judge Wilkinson also says the distinction between regulatory and physical takings is not relevant here because both rest on the false premise that a taking has occurred. Well, let me ask you this. The reason it's not a per se taking, I guess, from your point of view, is all you're regulating here is the rate of fire. And it makes it a regulatory taking as opposed to a per se, which is an exercise of police power. Yes, but the ban on possession is an exercise of this core public safety police power. And again, to get to Judge Richardson, because I think it responds to your question as well, Holiday Amusement relies on these long line of Supreme Court cases. But subsequent cases after Holiday Amusement, in the firearms context, the Court of Federal Claims in the Aikens case upheld the federal ban citing this same line of cases that when the state exercises police powers to protect public safety, the takings clause is not a limitation. And I get that those cases, there are some cases, lower court cases, that say the police power can overcome a per se taking. I don't understand how they're consistent with Horne and Lucas and Loretto. And so what I'm trying to, I just want to understand from you, what are the best cases that I can look at to support the notion that the police power or the nuisance background property principles apply to defeat a per se takings claim? You don't want lower court cases? Give me anything. I'm open to looking at anything. But when I've looked at the cases, I haven't found anything that supports that proposition. And that's what I'm trying to get to. McCutcheon and Modern Sportsman, two very recent federal claims cases that have come out, that were in the Notice of Supplemental Authority the Council provided, both rely on this notion that when the state is banning something, it's not taking it for public use. This would be a different case if the state were saying, we want to boost the firepower of Maryland state police officers, and so we want to take these and use them. I'm monopolizing your time, and I don't want to do that. But after Kelo, that argument doesn't work. Because we now have an extraordinarily broad definition of what public use is. It doesn't have to be, as Justice Thomas would have suggested, actually used by the government. It can be to some amorphous benefit of economic development. Same thing, amorphous benefit of public safety here. I don't think the public use gets you there. And I get that those cases apply these regulatory takings context, where they talk about police powers, like holiday amusement and muggler, in the regulatory context, and try to import them into the per se context. But post Horn, the court is very clear that you cannot use regulatory takings cases to interpret per se takings cases. I think that comes from Tahoe Sierra. It comes out of Horn. We see that repeatedly said. And I get the Court of Federal Claims does that. I assume not aware of that line of cases prohibiting them from doing so. But what I'm having trouble doing, and I'm sympathetic to the idea, is why if it was a, and maybe it's not a per se, but if it's per se, don't I have to ignore the police powers exception? If the government, and I guess I'm taking issue with your description of the public use requirement. In all of those cases, like Kelo, Horn, what have you, there is a public use here. The property isn't being destroyed. It's being converted to a different use. It's being redeveloped. It's being left as a sand dune in Lucas. There's always a use that the government is furthering through its action. In this case, when the state makes illegal certain types of items or conduct, it is not taking those items for a public use. It is protecting public safety. It's just you don't even get to the takings analysis. And that's what you see in these lower court cases. And you see it in the Third Association of New Jersey Rifle and Pistol Clubs where the court held that the ban on large capacity magazines that New Jersey enacted doesn't constitute a taking because it's an exercise of police power. Again, it's this false premise that just because the government does something that it affects people that you immediately jump to the takings analysis. When the government is prohibiting something altogether, no one gets to use it, you don't even get to the takings because you're not implicating the language of the Eminent Domain Clause. So explain, I mean, Lucas and all these cases are negative use cases, right? And you're saying it has to be an affirmative use, right? And Lucas itself is a negative use case. The Supreme Court makes clear, Justice Scalia makes clear in that case that whenever property is required to be left idle, there is a heightened concern that is being pressed into public service in some way. And in that case, it was because South Carolina was concerned about the development of sand dunes and the loss of that natural hurricane protection that it provides other properties. So Lucas, Mr. Lucas was being forced to leave his property idle so that it would further this public purpose of protecting other properties. And Justice Scalia draws that out in his decision in Lucas. You don't have that in cases like this where the government bans a piece of personal property because it's unreasonably dangerous. And that's where the historical context of here is important. This is not just another example of government overreach trying to regulate people too stringently. This is a response to a grave public safety risk that became clear to the country in October 2017 when the Las Vegas gunman took so many lives so quickly through the use of one of these devices. This is government doing what it is supposed to do. It's not regulatory overreach. It's protecting citizens by prohibiting unreasonably dangerous items. So this case is not like Horn at all for a variety of reasons. Horn, the government physically takes the raisins, takes title to the raisins, decides what to do with them, sells some of them, gives some of them, and then pays itself with the proceeds of that transaction to cover its administrative costs. It's not banning unreasonably dangerous items. It's not protecting public safety. It's using someone else's property for its own purposes. That's not this case. It's not even close to this case. Nick, too, another recent Supreme Court case that plaintiffs have identified to you, has nothing to do with this case either. That case merely overturned Clinton County's ripeness rule that said that takings plaintiffs who had federal claims would have to first go to state court before they could raise their federal claims in federal court. This case went to federal court in the beginning. No one's argued ripeness. No one's tried to get it remanded to a state court. So Horn, Nick, none of the recent Supreme Court cases get at this issue. Horn doesn't talk about public safety or core police powers in any way. It's just not even an issue. So a roundabout way, I think you have to yes, Horn is important for establishing that when the government physically seizes someone's personal property and takes it for its own use, that is a per se taking. That that is not that principle is not limited to land, as the Court of Appeals had said previously. Not this Court of Appeals. So it was clarifying that point, and it's an important case, but it doesn't silently overrule all of the cases that came before it that rely on this principle that the state does not exercise eminent domain power when it prohibits unreasonably dangerous items for public safety purposes. And look at a case like Michigan v. Bennis. That was a case where an automobile had been used to commit federal crime. It was seized by the government and a one-half owner of the vehicle brought a claim, brought a takings claim, saying that you have to give me compensation because you took my one-half interest of that automobile. And the Supreme Court said, no, the government's not acting under its eminent domain power here. It's acting under its power to seize items that are engaged in criminal activity. It's a completely different thing. Judge Wilkinson, in Holiday Amusement, also makes this point that that distinction is without a difference, whether the government is acting under a forfeiture statute or acting just to prohibit items that are unreasonably, you know, in that case it was dangerous to the public morals. But this case is stronger, I submit, than Holiday Amusement because it's got this core public safety risk. When government is doing that, it's not exercising its eminent domain powers. It's exercising these core police powers that have never been questioned in all of the Supreme Court's takings jurisprudence. I only have a few minutes left. I do want to switch over to vagueness a little bit. I do think that there's nothing they can do to change their allegations to solve the standing problems. But even if you get to the merits, it is a concocted interpretation. You have to beat these statutes as a whole, starting with the plain language, looking within the larger context of the statute. Only then, if it's ambiguous, you go to the legislative history. But every interpretive touchstone that you use in that analysis goes to show that installing a bipod or a pistol grip on your weapon does not make the rate of fire increase. It might make it more comfortable for you to use the weapon. It might make it easier for you to reacquire the target more accurately and more quickly, but it doesn't change the rate of fire of the weapon. So whether you look at it on the standing or on the merits, their vagueness claims don't get anywhere. Unless the court has further questions. I don't mean to monopolize this conversation. I apologize. I do have one. Could you respond to your colleague's argument that the term rate of fire is vague? The term... When you interpret statutes under the vagueness standard, you don't take this kind of hyper-technical I'm a firearms manufacturer and technically there's no such thing as rate of fire when you're talking about a pistol or a semi-automatic weapon. You take a common sense view. The view of an ordinary person who would be subject to this standard. And it has a common sense meaning that if you're installing something on your weapon that makes it shoot faster, that's increasing the rate of fire. I think this is taking the perspective of the firearms manufacturer and it's easy to take because they're forever inventing a better mousetrap, a different way of improving to make a rifle shoot more like a machine gun. Whether it's through coils or springs or harnessing the they're good at getting right up to the line of what is a prohibited machine gun. And so they have that kind of really granular perspective on that issue. But it's not the perspective that courts apply in determining whether a statute is unconstitutionally vague. And I note that the Florida District Court I believe rejected, or the Florida statute uses rate of fire. Other state statutes use rate of fire. So it is a commonly understood term. Judge Richardson, I thought you might have. Thank you. Judge Richardson, you're dead right. Now I wanted to focus, if I leave here today if there's anything I want this court to focus on is this passage from Judge Holmes. It says, prior to Judge Holmes' exposition in Pennsylvania Court, it was generally thought that a takings clause reached only a direct appropriation of property. That's what the state is talking about. Or, disjunctive, quote, the functional equivalent of a practical ouster of the owner's possession. Which is what we have here. But don't take my word for it. Whether or not the state acquires title or possession for their own ends is utterly and completely irrelevant. And General Mowers held so in 1943. And I quote, the courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Government actions short of acquisition of title or occupancy has been held if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter to amount to a taking. So I get that, but that doesn't actually respond to his point, I don't think. I think his point is slightly different, which is there are two separate inquiries and one of the inquiries, which was the inquiry that in part was fought in Kelo, is whether it constitutes a taking. Kelo focused on the word public. There was no doubt that the property was used, but the question there in Kelo was public. And Justice Stevens said, we're going to interpret public very broadly. But what it doesn't interpret is use. And what his argument is, is where there's no use at all, so in other words, it's just pure destruction, that that cannot be a taking. And those cases don't address that exactly. That's actually dead wrong. And Lucas addresses that. What we have here is that Ipsit-Dixit, and Lucas talks about this, that Ipsit-Dixit of the state saying, this is property we condemn. And the Supreme Court in Lucas says, no, you may not do that in the site of the case called Webb Pharmaceuticals, which was a personal property case. The Ipsit-Dixit is not sufficient because you cannot use that in order to ban something unless you do so by reference to an independent source. And that's the words of the Supreme Court. Independent source finding a counterpart in the common law of property and nuisance. And the Supreme Court said that wasn't present there, and it's not present here. Yeah, but Lucas didn't address the question of use. And in Lucas, as your colleague suggests, there was a use, right? The state wanted to use it as a hurricane barrier and a wildlife sanctuary and whatever the use is that they suggested, but there was a use of it in contrast to just a destruction where he says that's not a use and it doesn't fall under the Fifth Amendment. Your Honor, after Kelo, public use means public purpose. It's a rational basis, public police power. It doesn't have to be put to public use at all. It simply doesn't have to be put in the state's pocket. But Kelo is about the public piece, not the use piece of that. No, it's about the use piece, too, because the state in Kelo didn't put it in their own pocket. They gave it to a private developer. Who used it. Who then used it. Presumably for public purpose. That's what the Supreme Court held. So it simply doesn't matter whether they put it in their own pocket or not. It is as the Supreme Court said in General Motors, it's from the perspective of the user. In fact, Lucas says the same thing from the view of the owner. You see that same emphasis on in horn because the state's action, or the government's action in that case, through whatever means, it happened to be by taking title to it, deprived the person of the right to possess. It's the rights that are lost, not what the government puts those rights to. It's not what the government uses them for because that's irrelevant to a per se taking. I hate to do this, really, but on standing, why did you ask in your brief for an opportunity to amend if you don't think there's anything you can do to cure the defect? I think that has to be referenced by an opportunity to amend. An opportunity to amend under the proper legal standard. And that's it. Because we can't amend to say anything under the district court's legal standard that would remotestly get us there because we don't have those facts. We don't have facts that someone's about to arrest us. That's not part of the case. We have the sort of democracy problem in this case. What does this mean in your brief? Counsel proffers that additional facts related to the specific devices owned by the plaintiffs and the risk presented to them by the statute can be pleaded if necessary. Those all relate to whether or not these individuals can have additional devices. But again, that doesn't mean that we can actually allege facts sufficient under the district court standard. We're not addressing the district court standard there. We attack the district court standard. So under the proper standard, we can ask for facts. But that is simply not presented. And I think counsel has agreed with us on that. You can't just agree away jurisdiction or what? Well, I agree with that, Your Honor. So I see my time has expired. I thank the court for its time. Thank you very much. We'll come down and agree counsel and then move to our final case.
judges: Henry F. Floyd, Stephanie D. Thacker, Julius N. Richardson